# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Elaine E. Bucklo | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 01 C 8784 | **DATE** | 1/28/2004 |
| **CASE TITLE** | Liberty Mutual Ins. Co. vs. Decking and Steel, et al. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
  ☐ FRCP4(m)  ☐ Local Rule 41.1  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] Plaintiff's motion for summary judgment is granted as to Counts I, III, IV, VI, VII, VIII, X, XIII, and XIV. The Motion is denied as to Counts IX, XI, and XII. The motion as to Counts II and V is denied as moot. Enter Memorandum Opinion and Order.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | Document Number |
|---|---|---|---|---|
| | No notices required, advised in open court. | | 2 number of notices | |
| | No notices required. | | | |
| ✓ | Notices mailed by judge's staff. | | JAN 29 2004 date docketed | |
| | Notified counsel by telephone. | | | |
| | Docketing to mail notices. | | docketing deputy initials | 92 |
| | Mail AO 450 form. | | | |
| | Copy to judge/magistrate judge. | | 1/28/2004 date mailed notice | |
| MPJ | courtroom deputy's initials | Date/time received in central Clerk's Office | MPJ6 mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

LIBERTY MUTUAL INSURANCE COMPANY, )
)
Plaintiff, )
)
v. )
) No. 01 C 8784
DECKING AND STEEL, INC, NORTHWEST )
DECK ERECTORS, INC., DONALD FINNEY )
CRANE RENTAL, INC., PRO-GAS, INC., )
STEEL & DECK CONSTRUCTION COMPNAY, )
INC., and DONALD FINNEY )
)
Defendants. )

### MEMORANDUM OPINION AND ORDER

Illinois law requires many employers to purchase workers' compensation insurance to protect their employees. Where employers cannot obtain insurance via the private market, they may obtain coverage via the Illinois Workers' Compensation Insurance Plan ("Plan"). Premiums for such insurance are determined by categorizing workers into coded categories, each with a different level of risk based on the work performed by employees in that class. In June of 1999, defendant Decking & Steel, Inc. ("Decking"), a construction business, submitted an application to the Plan for workers' compensation insurance coverage. The application listed workers under codes for sheet metal work, contractor-executive supervisor, and crane & hoisting, but did not list any workers under the code for steel erection work. The application was signed by Decking's president, defendant Donald

Finney, and contained a statement verifying the accuracy of the statements it contained. Based on this application, plaintiff Liberty Mutual Insurance Company ("Liberty") was assigned as the servicing carrier to provide insurance to Decking.

Decking and Liberty agreed on two separate policies with nearly identical terms, one covering the period from June 16, 1999 to June 16, 2000, and the other covering the period from June 16, 2000 through June 16, 2001. The contracts between the parties provided that at the outset of the coverage period, Decking would pay an estimated premium of $108,307 based on a preliminary calculation, but that at the end of the coverage period, a final premium would be calculated based on the actual business conducted by Decking during the previous year. If the final premium turned out to be greater than the estimated premium, Decking would pay Liberty the balance; conversely, if the final premium were less than the estimated premium, Liberty would reimburse Decking for the overpayment. The contract also required that Decking retain records of information needed to compute premiums, and that Decking permit Liberty to examine all records that pertained to the policy. Liberty retained the right to conduct audits during the policy period and within three years after its end.

On or about January 7, 2000, in response to a fatal accident, Liberty conducted a safety visit of Decking's operations. The report from that visit indicated that Decking may also have been

engaged in steel erection. On numerous occasions over the next six months, Liberty contacted Decking via correspondence and telephone to attempt to set up an audit. On July 10, 2000, Decking directed Liberty to contact Decking's external accountant to obtain the documentation to complete the audit. Several attempts to contact the accountant failed. Finally, on September 20, 2000, Decking's accountant met with Liberty's auditor. However, the documents sought were not provided by either Decking or its accountant. Two appointments were scheduled to complete the audit, and both were canceled by Decking. On November 21, 2000, Liberty canceled Decking's policy for nonpayment of premiums, but continued its attempts to complete the audit. On January 18, 2001, the audit of the first policy was completed and mailed to Decking. That audit resulted in a final premium of $557,412, a much larger sum than the first estimate. An appointment set for February 1, 2001 to review that audit was canceled by Decking. Attempts to schedule an audit of the second policy once again failed; Liberty issued an estimated audit of that policy on or about March 21, 2001, showing a balance owed of $301,846. Based on factual information obtained during discovery in this case, Liberty now claims a balance of $724,133 on the first policy and $402,736 on the second. Liberty also seeks recovery of prejudgment interest at the rate of five percent per annum pursuant to 815 ILL. COMP. STAT. 205/2, which it claims amounts to $102,722 and $58,424 respectively.

3

Decking ceased doing business in January 2001. In February 2001, Mr. Finney incorporated Steel & Deck Construction Company ("Steel"), which, like Decking, was wholly owned and operated by Mr. Finney, and which had the same office space, customers, workers, etc. as Decking. Mr. Finney acknowledges that each of the corporate defendants is simply a rollover successor to the previous incarnation of his construction business, and that he and Steel are responsible for Decking's debts.

On November 14, 2001, Liberty filed a fourteen-count suit against the defendants alleging breach of contract, negligent misrepresentation, unjust enrichment, and fraud. Liberty now moves for summary judgment in its favor on all counts. I GRANT the motion as to Counts I, III, IV, and VI (breach of contract and recovery of interest) and Count VII (negligent misrepresentation). I also GRANT it as to Counts VIII, X, XIII, and XIV, which seek to prove that Mr. Finney's various companies should be considered one entity and that Mr. Finney is personally liable for the losses incurred by his companies; the defendants have admitted that Mr. Finney and the corporate defendants are, in effect, one entity. I DENY the motion as to Counts IX, XI and XII (unjust enrichment, fraud, and fraudulent conveyance). Counts II and V request an accounting which has occurred and are DENIED as moot.

On a motion for summary judgment, I must evaluate admissible evidence in the light most favorable to the non-moving party.

*Bennett v. Roberts*, 295 F.3d 687, 694 (7th Cir. 2000). The defendants effectively admit to breaching both policies. Mr. Finney acknowledges that he stopped paying premiums during the coverage period of the second policy and that he paid only the estimated premium on the first. It is clear from the record that Mr. Finney obstructed Liberty's attempts to perform the audits required by the contract. Mr. Finney's entire argument in his own defense boils down to the allegation that the figure in the final audit was much larger than either party contemplated at the time the agreement was signed. That may be, but the contract clearly states that Decking would pay the final premium as calculated by Liberty in its audit at the end of the coverage period. It also states that this final premium may be higher or lower than the estimated premium. Decking insists that the figures are too high, but does not point out any accounting errors or factual mistakes in Liberty's calculation of the total. Nor does it offer any reason why it should not have to pay other than the fact that Mr. Finney relied on the expertise of his insurance broker, Howard Mack, in applying for insurance. This is not enough to permit him or Decking to escape from the contract he signed. Furthermore, if the final premium was higher than anticipated at the outset of the contract, this is largely because Mr. Finney did not reveal at the outset that the largest portion of his business consisted of steel erection work. Summary judgment is therefore appropriate on the breach of contract claim.

Illinois law provides that "Creditors shall be allowed to receive at the rate of five (5) per centum per annum for all moneys after they become due on any bond, bill, promissory note, or other instrument of writing." 815 ILL. COMP. STAT. 205/2. This prejudgment interest is properly awarded where "a debtor-creditor relationship has come into being and the amount due is fixed or readily ascertainable by calculation or computation." *Zayre Corp. v. SM & R Co., Inc.*, 882 F.2d 1145, 1156 (7th Cir. 1989). Premiums owed on an insurance policy may fall under the act because the insurance contract is an instrument of writing. *W.E. O'Neil Constr. Co. v. Gen. Cas. Co. of Ill.*, 748 N.E.2d 667, 674 (Ill. App. Ct. 2001). Here, the amount due is readily calculable based on the number and type of covered workers employed by Decking. Thus, Liberty is entitled to collect prejudgment interest in addition to the premiums owed.

Summary judgment is similarly appropriate on the claim of negligent misrepresentation. The elements of a claim for negligent misrepresentation in Illinois are as follows:

> (1) a false statement of material fact, (2) carelessness or negligence in ascertaining the truth of the statement by the party making it, (3) an intention to induce the other party to act, (4) action by the other party in reliance on the truth of the statement, and (5) damage to the other party resulting from such reliance, (6) when the party making the statement is under a duty to communicate accurate information."

*Roe v. Jewish Children's Bureau of Chicago*, 790 N.E.2d 882, 893 (Ill. App. Ct. 2003). No genuine issue of fact exists as to any of

these elements. It is undisputed that, despite knowing that his company engaged in steel erection, Mr. Finney failed to identify any of his employees as performing this type of work in his insurance application. Mr. Finney also stated, inaccurately, that Decking was not related through common management or ownership to any other entity, had not consolidated, merged, or changed its name in the last five years, and made other untrue statements. It could, perhaps, be argued that Mr. Finney did not realize that he was mislabeling his employees on the application, but it was certainly negligent to apply for workers' compensation insurance without bothering to check which premium categories applied to which of his workers. Mr. Finney obviously intended to induce Liberty to act; that was the purpose of the application. It is also undisputed that the precise type of work undertaken by Mr. Finney's employees affected the risk to Liberty and the premiums it would have charged. Finally, an insurance applicant bears a duty to make a complete and truthful disclosure of all relevant information. *New England Mut. Life Ins. Co. v. Bank of Ill.*, 994 F. Supp 970, 976 (N.D. Ill. 1998) (Alesia, J.).

Counts IX, XI, and XII present questions of fact. Summary judgment would be proper on the fraud counts only if no reasonable jury could find that the defendants did not act intentionally. While the defendants' behavior was, at a minimum, negligent, Liberty has not met its burden of showing that the deception was

intentional. Count IX, unjust enrichment, may be pursued in the presence of a written contract between the parties only if it sounds in tort, rather than in quasi-contract. *Peddinghaus v. Peddinghaus*, 692 N.E.2d 1221, 1225 (Ill. App. Ct. 1998). The tort alleged here is fraud, but summary judgment is denied on the fraud claim. Thus, it is also denied on the unjust enrichment claim predicated on the fraud claim.

ENTER ORDER:

**Elaine E. Bucklo**
United States District Judge

Dated: January 28, 2004